UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

```
-----------------------------x
                             :
NICOLE LINGLEY               :    Civ. No. 3:19CV00682(SALM)
                             :
v.                           :
                             :
ANDREW M. SAUL,              :    August 5, 2020
COMMISSIONER, SOCIAL         :
SECURITY ADMINISTRATION      :
                             :
-----------------------------x
```

<u>**RULING ON CROSS MOTIONS**</u>

Plaintiff Nicole Lingley brings this appeal pursuant to §205 of the Social Security Act ("the Act"), as amended, 42 U.S.C. §405(g), seeking review of a final decision by the Commissioner of the Social Security Administration (the "Commissioner") denying her application for Supplemental Security Income ("SSI"). Plaintiff moves for an order reversing the decision of the Commissioner, or in the alternative, for remand. **[Doc. #11].** Defendant moves to affirm the decision of the Commissioner. **[Doc. #15].** Plaintiff has submitted a statement of material facts which has been adopted by the Commissioner, with the addition of certain supplemental facts. <u>See</u> Docs. #11-2; #15-2.

For the reasons set forth below, plaintiff's Motion to Reverse or Remand **[Doc. #11]** is **DENIED**, and defendant's Motion for an Order Affirming the Decision of the Commissioner **[Doc.**

1

**#15]** is **GRANTED.**

I.   **PROCEDURAL HISTORY**

Plaintiff filed an application for SSI and disability insurance benefits ("DIB") in August 2015, alleging disability beginning October 1, 2006. See Certified Transcript of the Administrative Record, Doc. #9 and attachments, compiled on June 18, 2019, (hereinafter "Tr.") at 243-52. Her claims were denied on November 2, 2015. See Tr. 84-85. Plaintiff timely requested a hearing before an Administrative Law Judge ("ALJ") on November 25, 2015. See Tr. 113-14.

Plaintiff's hearing was initially scheduled for September 19, 2017. See Tr. 138, 150. However, plaintiff did not appear for the September 19, 2017, hearing, see Tr. 154, because she "was not feeling well and by the day of the hearing [she] could not so much as leave the house, for how sick [she] felt." Tr. 157. On September 28, 2017, plaintiff advised the Office of Disability Adjudication and Review of her change of address to Woodbury, Connecticut. See Tr. 158. On October 26, 2017, plaintiff was notified that her hearing had been re-scheduled for January 18, 2018. See Tr. 159.

On January 18, 2018, ALJ Katherine Edgell held a hearing at which plaintiff appeared and testified. See Tr. 41-63.[1] At the

---

[1] While plaintiff currently resides in Connecticut, her hearing took place at the Office of Disability Adjudication and Review's

hearing, plaintiff amended her alleged onset date to August 4, 2015, and voluntarily withdrew her request for DIB. See Tr. 43. Plaintiff was represented at the hearing by Attorney J. Anklowitz. See Tr. 41.[2] Vocational Expert ("VE") Robert Baker also testified, apparently by telephone.[3] See Tr. 41, 61-62. On May 7, 2018, the ALJ issued an unfavorable decision, denying plaintiff's application for benefits. See Tr. 11-22. Plaintiff filed a timely request for review of the hearing decision on July 3, 2018. See Tr. 238-42. On March 7, 2019, the Appeals Council denied review, thereby rendering the ALJ's May 7, 2018, decision the final decision of the Commissioner. See Tr. 1-4. Plaintiff timely filed this action on May 6, 2019. See Doc. #1. The case is now ripe for review under 42 U.S.C. §405(g).

## II.   **STANDARD OF REVIEW**

The review of a Social Security disability determination involves two levels of inquiry. First, the Court must decide whether the Commissioner applied the correct legal principles in

---

office in White Plains, New York. See Tr. 41, 159. Plaintiff's hearing was held at the White Plains office because at the time she requested a hearing she resided in Yonkers, New York. See Tr. 113, 138.

[2] Plaintiff is currently represented by Attorney Howard Olinsky. See Doc. #11-1 at 10.

[3] The Transcript does not expressly state that the VE appeared telephonically, but the ALJ indicates that she is going to "call the vocational expert." Tr. 59. At that point the transcript indicates that the VE joined the hearing. See id.

making the determination. Second, the Court must decide whether the determination is supported by substantial evidence. See Balsamo v. Chater, 142 F.3d 75, 79 (2d Cir. 1998). Substantial evidence is evidence that a reasonable mind would accept as adequate to support a conclusion; it is more than a "mere scintilla." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). The reviewing court's responsibility is to ensure that a claim has been fairly evaluated by the ALJ. See Grey v. Heckler, 721 F.2d 41, 46 (2d Cir. 1983).

The Court does not reach the second stage of review – evaluating whether substantial evidence supports the ALJ's conclusion – if the Court determines that the ALJ failed to apply the law correctly. See Norman v. Astrue, 912 F. Supp. 2d 33, 70 (S.D.N.Y. 2012) ("The Court first reviews the Commissioner's decision for compliance with the correct legal standards; only then does it determine whether the Commissioner's conclusions were supported by substantial evidence." (citing Tejada v. Apfel, 167 F.3d 770, 773-74 (2d Cir. 1999))). "Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made

4

according to the correct legal principles." Johnson v. Bowen, 817 F.2d 983, 986 (2d Cir. 1987).

"[T]he crucial factors in any determination must be set forth with sufficient specificity to enable [a reviewing court] to decide whether the determination is supported by substantial evidence." Ferraris v. Heckler, 728 F.2d 582, 587 (2d Cir. 1984) (alterations added) (citing Treadwell v. Schweiker, 698 F.2d 137, 142 (2d Cir. 1983)). The ALJ is free to accept or reject the testimony of any witness, but a "finding that the witness is not credible must nevertheless be set forth with sufficient specificity to permit intelligible plenary review of the record." Williams ex rel. Williams v. Bowen, 859 F.2d 255, 260-61 (2d Cir. 1988) (citing Carroll v. Sec. Health and Human Servs., 705 F.2d 638, 643 (2d Cir. 1983)). "Moreover, when a finding is potentially dispositive on the issue of disability, there must be enough discussion to enable a reviewing court to determine whether substantial evidence exists to support that finding." Johnston v. Colvin, No. 3:13CV00073(JCH), 2014 WL 1304715, at *6 (D. Conn. Mar. 31, 2014) (citing Peoples v. Shalala, No. 92CV04113, 1994 WL 621922, at *4 (N.D. Ill. Nov. 4, 1994)).

It is important to note that in reviewing the ALJ's decision, this Court's role is not to start from scratch. "In reviewing a final decision of the SSA, this Court is limited to

determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." Talavera v. Astrue, 697 F.3d 145, 151 (2d Cir. 2012) (quoting Lamay v. Comm'r of Soc. Sec., 562 F.3d 503, 507 (2d Cir. 2009)).

Finally, some of the Regulations that may be cited in this decision were amended effective March 27, 2017. Those "new regulations apply only to claims filed on or after March 27, 2017." Smith v. Comm'r, 731 F. App'x 28, 30 n.1 (2d Cir. 2018) (summary order). Where a plaintiff's claim for benefits was filed prior to March 27, 2017, "the Court reviews the ALJ's decision under the earlier regulations[.]" Rodriguez v. Colvin, No. 3:15CV01723(DFM), 2018 WL 4204436, at *4 n.6 (D. Conn. Sept. 4, 2018); White v. Comm'r, No. 17CV04524(JS), 2018 WL 4783974, at *4 (E.D.N.Y. Sept. 30, 2018) ("While the Act was amended effective March 27, 2017, the Court reviews the ALJ's decision under the earlier regulations because the Plaintiff's application was filed before the new regulations went into effect." (citation omitted)).

## III. SSA LEGAL STANDARD

Under the Social Security Act, every individual who is under a disability is entitled to disability insurance benefits. 42 U.S.C. §423(a)(1).

To be considered disabled under the Act and therefore

entitled to benefits, plaintiff must demonstrate that she is unable to work after a date specified "by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A). Such impairment or impairments must be "of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. §423(d)(2)(A); 20 C.F.R. §416.920(c) (requiring that the impairment "significantly limit[] ... physical or mental ability to do basic work activities" to be considered "severe" (alterations added)).

There is a familiar five-step analysis used to determine if a person is disabled. See 20 C.F.R. §416.920. In the Second Circuit, the test is described as follows:

> First, the Secretary considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the Secretary next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the Secretary will consider him disabled without considering vocational factors such as age, education, and work experience; the Secretary presumes that a claimant who is afflicted with a "listed"

impairment is unable to perform substantial gainful activity.

Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982) (per curiam). If and only if the claimant does not have a listed impairment, the Commissioner engages in the fourth and fifth steps:

> Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the Secretary then determines whether there is other work which the claimant could perform. Under the cases previously discussed, the claimant bears the burden of proof as to the first four steps, while the Secretary must prove the final one.

Id.

"Through the fourth step, the claimant carries the burdens of production and persuasion, but if the analysis proceeds to the fifth step, there is a limited shift in the burden of proof and the Commissioner is obligated to demonstrate that jobs exist in the national or local economies that the claimant can perform given [her] residual functional capacity." Gonzalez ex rel. Guzman v. Dep't of Health and Human Serv., 360 F. App'x 240, 243 (2d Cir. 2010) (alteration added); Poupore v. Astrue, 566 F.3d 303, 306 (2d Cir. 2009) (per curiam)). The residual functional capacity ("RFC") is what a person is still capable of doing despite limitations resulting from her physical and mental impairments. See 20 C.F.R. §416.945(a)(1).

"In assessing disability, factors to be considered are (1) the objective medical facts; (2) diagnoses or medical opinions based on such facts; (3) subjective evidence of pain or disability testified to by the claimant or others; and (4) the claimant's educational background, age, and work experience." Bastien v. Califano, 572 F.2d 908, 912 (2d Cir. 1978). "[E]ligibility for benefits is to be determined in light of the fact that 'the Social Security Act is a remedial statute to be broadly construed and liberally applied.'" Id. (quoting Haberman v. Finch, 418 F.2d 664, 667 (2d Cir. 1969)).

IV.   **THE DECISIONS OF THE ALJ AND THE APPEALS COUNCIL**

Following the above-described five-step evaluation process, the ALJ concluded that plaintiff was not disabled under the Act. See Tr. 22. At step one, the ALJ found that plaintiff had not engaged in substantial gainful activity since the application date of August 4, 2015. See Tr. 14. At step two, the ALJ found that plaintiff had the severe impairments of "major depressive, bipolar, post-traumatic stress, social anxiety, and borderline personality disorders[.]" Tr. 14. The ALJ evaluated plaintiff's "history of obesity[]" and found that it was "not a medically determinable severe impairment." Tr. 14. The ALJ also evaluated plaintiff's "left wrist and hand pain" and found:

> The evidence does not show that this condition had more
> than a minimal impact on the claimant's ability to
> perform basic work activities. Furthermore, no

9

aggressive treatment was recommended or anticipated for it. Without more, this condition does not significantly limit the claimant's ability to perform basic work activities and constitutes only a non-severe impairment.

Tr. 14.

At step three, the ALJ found that plaintiff's impairments, either alone or in combination, did not meet or medically equal the severity of any of the listed impairments in 20 C.F.R. Pt. 404, Subpt. P, App. 1. See Tr. 14-16. The ALJ specifically considered Listings 12.04, 12.06, 12.08, and 12.15. See Tr. 14.

Before moving on to step four, the ALJ found plaintiff had the RFC "to perform a full range of work at all exertional levels but with the following nonexertional limitations: she is limited to simple tasks, without significant decision-making and only occasional interaction with all others." Tr. 16.

At step four, the ALJ concluded that plaintiff is unable to perform any past relevant work, which included work as a "Billing Clerk" and "Attendant, Children's Institution[.]" Tr. 20. At step five, after considering the testimony of the VE as well as plaintiff's age, education, work experience, and RFC, the ALJ found that "there are jobs that exist in significant numbers in the national economy that the claimant can perform[.]" Tr. 21. Based on the testimony of the VE, the ALJ concluded that plaintiff "would be able to perform the requirements of" occupations including "Photocopying-Machine

Operator," "Marker," and "Router Clerk[.]" Tr. 21.

Plaintiff submitted additional medical evidence to the Appeals Council on review. See Tr. 2. This evidence included medical source statements ("MSS") from two doctors, Edward Greene, M.D.,[4] and Johnny Kovoor, M.D. See Tr. 2, 34-36, 38-40. The Appeals Council decision stated: "We found no reason under our rules to review either the dismissal action or the decision of the Administrative Law Judge. Therefore, we have denied your request for review." Tr. 1. The Appeals Council listed the additional medical evidence received and concluded: "We find this evidence does not show a reasonable probability that it would change the outcome of the decision. We did not exhibit this evidence." Tr. 2.

## V.   **DISCUSSION**

Plaintiff contends that both the Appeals Council and the ALJ erred in their decisions. Specifically, plaintiff asserts that the Appeals Council erred in its evaluation of Dr. Edward Greene's opinion. See Doc. #11-1 at 3.[5] Plaintiff also asserts that the ALJ erred in her RFC determination, because she failed

---

[4] The Court notes that while both plaintiff and the Commissioner identify this individual as "Dr. Green[,]" the medical records in the transcript indicate that the correct spelling is Dr. Greene. See Tr. 849-50. The Court will use the spelling on Dr. Greene's own records.

[5] All page citations in this ruling refer to the ECF pagination rather than to counsel's page numbering.

to assign proper weight to the opinion of a therapist, Danielle O'Malley. See Doc. #11-1 at 6-10.

## A.   The Appeals Council's Decision

Plaintiff contends that the Appeals Council failed to properly evaluate Dr. Greene's opinion. See Doc. #11-1 at 3-6. Plaintiff submitted an MSS signed by Dr. Greene on January 24, 2018, (the "Greene opinion") to the Appeals Council as additional evidence. See Tr. 34-36.[6] Plaintiff asserts that the Appeals Council failed to properly evaluate the Greene opinion when it "found that Dr. Green's opinion did not 'show a reasonable probability that it would change the outcome of the decision.'" Doc. #11-1 at 3 (quoting Tr. 2). Plaintiff asserts that because "the opinion showed that Plaintiff was far more limited than accounted for by the ALJ's RFC determination and was consistent with other evidence in the record, this was error." Doc. #11-1 at 3.

---

[6] Plaintiff's counsel asserts that the Greene opinion was not submitted to the ALJ because plaintiff's "attorney received the opinion after the record was closed by the ALJ, three weeks after the hearing." Doc. #11-1 at 3 (emphasis added). This appears to be inaccurate. The Greene opinion is dated January 24, 2018, see Tr. 36, which "post-dated the hearing by six days." Doc. #11-1 at 3. However, during the January 18, 2020, hearing, the ALJ informed plaintiff and her counsel that the ALJ would put this case "in post for three weeks[,]" to allow plaintiff time to gather additional records. Tr. 58. The three-week "post" period ended on February 8, 2018. The fax header on the Greene opinion indicates that plaintiff's counsel received it on "6-Feb-2018[.]" Tr. 34. That was within the three-week post period. However, it was not submitted to the ALJ.

> The Appeals Council will review a case if ... the Appeals
> Council receives additional evidence that is new,
> material, and relates to the period on or before the
> date of the hearing decision, and there is a reasonable
> probability that the additional evidence would change
> the outcome of the decision.

20 C.F.R. §416.1470(a)(5).

"New evidence is any evidence that has not been considered previously during the administrative process[,]" that is not cumulative. McIntire v. Astrue, 809 F. Supp. 2d 13, 21 (D. Conn. 2010). "Evidence is material if it is (i) relevant to the time period for which benefits have been denied and (ii) probative, meaning it provides a reasonable probability that the new evidence would have influenced the Commissioner to decide the claimant's application differently." Id. "[N]ew evidence submitted to the Appeals Council following the ALJ's decision becomes part of the administrative record for judicial review when the Appeals Council denies review of the ALJ's decision." Perez v. Chater, 77 F.3d 41, 45 (2d Cir. 1996).

The Appeals Council concluded that the new evidence provided did "not show a reasonable probability that it would change the outcome of the decision." Tr. 2; see also 20 C.F.R. §416.1470(a)(5) (Appeals Council will review a case if "there is a reasonable probability that the additional evidence would change the outcome of the decision."). The Appeals Council did not further explain its decision.

13

Plaintiff asserts that there is a reasonable probability that the Greene opinion would change the outcome of the decision. Plaintiff asserts that Dr. Greene qualifies as a "treating physician," whose opinion is entitled to controlling weight, and that his opinion would have changed the outcome because: (1) The Greene opinion suggests greater limitations in plaintiff's abilities than the other opinions presented to the ALJ, see Doc. #11-1 at 4-5; (2) The Greene opinion would have affected the weight assigned to other opinions in the record, see id. at 5; (3) "Dr. Green's opinion that Plaintiff was unable to interact with coworkers, supervisors, or the general public would be disabling according to the testimony from" the VE, id.; and (4) "Dr. Green opined that Plaintiff was markedly to extremely limited, which would support a finding that Plaintiff would meet or medically equal a listing[,]" thus requiring "a finding that Plaintiff was disabled at Step 3[,]" id. at 6.

The Commissioner asserts that "[p]laintiff's argument is without merit[.]" Doc. #15-1 at 7. "First, contrary to Plaintiff's central argument, Dr. Green had barely treated Plaintiff at the time of writing his MSS, so the treating physician rule would not apply to his opinions." Doc. #15-1 at 7; see also Doc. #11-1 at 4. "The Commissioner also argues that Dr. Green's MSS would have not changed the outcome of the ALJ's decision because it was not supported by his treatment notes."

14

Doc. #15-1 at 8. Finally, the Commissioner asserts that the Greene opinion is "inconsistent with substantial evidence in [the] record[.]" Doc. #15-1 at 8. In sum, the Commissioner asserts that the Greene opinion "did not alter the weight of the evidence so dramatically as to require the Appeals Council to take the case." Bushey v. Colvin, 552 F. App'x 97, 98 (2d Cir. 2014).

The Court finds no error in the Appeals Council's decision. As a threshold matter, the record does not support a conclusion that Dr. Greene qualifies as a "treating physician" whose opinion would be entitled to controlling weight. There is no doubt that Dr. Greene is a "physician." The question here is whether he is a "treating physician," which requires that he have a meaningful treating relationship with plaintiff. "Although there is no minimum number of visits required to establish a treating physician relationship, a physician who has examined a claimant on one or two occasions is generally not considered a treating physician." Burpoe v. Berryhill, No. 18CV03168(HBP), 2019 WL 3329818, at *18 (S.D.N.Y. July 24, 2019) (citations and quotation marks omitted); see also Cooper v. Saul, -- F. Supp. 3d --, 2020 WL 1219252, at *12 (S.D.N.Y. Mar. 12, 2020) (two appointments "insufficient, without more, to establish a treating physician relationship[]"). Plaintiff testified that she saw Dr. Greene once, in October 2017, and

15

"did phone calls with him[]" until December 2017. Tr. 48. Asked to provide all records from January 1, 2017, through December 7, 2017, Dr. Greene provided only a brief letter dated December 7, 2017, (the date of the request) reflecting a single visit. See Tr. 850. No contemporaneous record of any October 2017 appointment was provided, and no records or mention of telephone calls were provided.

Further, there are no treatment notes from Dr. Greene that would support his opinion. The Greene opinion asserts that plaintiff suffers from a litany of conditions, including "major depressive disorder, anxiety, social phobia, agoraphobia, bipolar personality symptoms ... borderline personality disorder ... and obsessive compulsive disorder." Tr. 35. The sole record regarding plaintiff provided by Dr. Greene consists of a one-page letter created December 7, 2017, stating, in its entirety:

> Nicole Lingley was seen in my office for Psychotherapy and Psychiatrist evaluation. During my visit with Ms. Nicole Lingley it became obvious that she was suffering from a Major Depressive Disorder with Anxiety and Phobias as a result she was prescribe Prozac 10 mg twice a day to alleviate her anxiety.
>
> If you need any more information please feel free to call upon.

Tr. 850 (sic). This single, conclusory report, apparently created at the time it was requested, but reflecting a visit in October, provides no support for the conclusions in the Greene opinion. Indeed, it fails to even mention some of the conditions

16

described in the Greene opinion, and provides no information regarding the source of that opinion.

The Greene opinion is rendered on a check box form, rendering it of less value. See Rivera v. Berryhill, No. 3:16CV01842(JAM), 2018 WL 1521824, at *5 (D. Conn. Mar. 28, 2018) ("The Second Circuit has consistently held that opinions rendered on 'check-box' forms are often the ones that offer little meaningful insight into the basis for the clinician's findings."). Further, where the form requests "medical/clinical findings" to support the opinion, the form merely reports that plaintiff has a "history" of various diagnoses. Tr. 35.

Finally, the extreme limitations described in the Greene opinion are inconsistent with other evidence of record. As described in detail in the ALJ's opinion, medical records from a variety of sources documented generally moderate or mild impairments. See Tr. 17-19, citing Tr. 680 (Apr. 20, 2015, report noting plaintiff's insight and judgment as fair); Tr. 682 (Sept. 15, 2015, report of normal mental status examination, noting that plaintiff "has strengths"); Tr. 686-97 (May and June 2017 records reporting largely intact judgment and cognition, and fair insight). Furthermore, the Greene opinion is inconsistent with the other MSS submitted to the Appeals Council, authored by Dr. Kovoor, which found only moderate limitations. See Tr. 38-40.

17

The ALJ incorporated significant nonexertional limitations in the RFC, limiting plaintiff to "simple tasks, without significant decision-making and only occasional interaction with all others." Tr. 16. The Greene opinion offers no persuasive evidence that would alter that assessment. The Appeals Council did not err in finding that the Greene opinion would not have a reasonable probability of changing the outcome of the decision.

**B.    ALJ's Assignment of Weight to the O'Malley Opinion**

Plaintiff argues that the ALJ "failed to properly analyze the opinion evidence in accordance with the regulations." Doc. #11-1 at 6. Specifically, plaintiff asserts that the ALJ failed to apply the factors set forth in 20 C.F.R. §416.927(c) when evaluating the opinion of LMSW[7] Danielle O'Malley, and erred in assigning "partial weight" and "limited weight" to her opinions. See Doc. #11-1 at 7. Plaintiff appears to contend that this alleged error affects both Step Three and the RFC determination. See Doc. #11-1 at 6 (addressing RFC); id. at 11 (addressing Step Three). In response, the Commissioner asserts that "[p]laintiff overstates the extent to which the ALJ rejected Therapist O'Malley's opinions." Doc. #15 at 14. Further, the Commissioner argues that "even if the ALJ did not explicitly state all the

_____

[7] LMSW stands for "Licensed Master Social Worker." See Bonilla Mojica v. Berryhill, 397 F. Supp. 3d 513, 540 (S.D.N.Y. 2019).

reasoning behind her weighing of Therapist O'Malley's opinions, the Second Circuit has consistently held that an ALJ need not explain all of her reasoning[.]" Doc. #15-1 at 15 (citing Mongeur v. Heckler, 722 F.2d 1033, 1040 (2d Cir. 1983)).

The ALJ assigned "partial weight" to Ms. O'Malley's opinion that plaintiff had "fair ability" to "perform simple work activities and make personal and social adjustments." Tr. 19. The ALJ assigned "limited weight" to Ms. O'Malley's opinion that plaintiff had "poor ability to interact with others and deal with work stresses." Tr. 19.

The Court finds that the ALJ sufficiently considered the 20 C.F.R. §416.927(c) factors, including:

> (1) whether the medical source examined the claimant; (2) the length, nature and extent of the treatment relationship, including the frequency of examination; (3) the relevant evidence used to support the opinion; (4) the consistency of the opinion with the entire record; (5) the expertise and specialized knowledge of the source; and (6) other factors that may be germane.

Duquette v. Saul, No. 3:19CV00526(SALM), 2020 WL 2832215, at *4 (D. Conn. May 31, 2020). The ALJ explicitly considered the fact that Ms. O'Malley examined plaintiff, citing to the record of the single treatment session plaintiff apparently had with her. See Tr. 17 (noting that plaintiff "presented to Danielle O'Malley, LMSW[]" in September 2015). The fact that Ms. O'Malley met with plaintiff only once, according to the records, significantly diminishes the value of her opinion.

The ALJ also expressly considered the factors set forth in 20 C.F.R. §§416.927(c)(3) and (4). The ALJ observed that plaintiff had told Ms. O'Malley "that she assumes the role of caretaker;" that Ms. O'Malley's records reported plaintiff had strengths such as being a "good mother" and having "good insight;" and that Ms. O'Malley reported "normal mental status examination findings." Tr. 19. To the extent plaintiff contends the ALJ failed to consider any "relevant evidence used to support" Ms. O'Malley's opinion, there was none. Indeed, where the opinion form asked Ms. O'Malley to describe plaintiff's limitations in her ability to make occupational adjustments, including relating to others, and provide the "medical/clinical findings that support this assessment[,]" Ms. O'Malley wrote: "[Client] reports severe anxiety and panic as well as depression and interpersonal difficulty." Tr. 412. Thus, only plaintiff's self-report was offered in support of these key findings in Ms. O'Malley's opinion. It is proper to discount an opinion where it relies "heavily on [plaintiff's] self-reporting, and seem[s] to uncritically accept as true most, if not all, of what [plaintiff] reported." Kepke v. Comm'r of Soc. Sec., 636 F. App'x 625, 629 (6th Cir. 2016) (citations and quotation marks omitted); see also Wilson v. Saul, No. 3:18CV01097(WWE), 2019 WL 2603221, at *6 (D. Conn. June 25, 2019) ("[T]he ALJ reasonably concluded that the statements contained in LCSW Zang's opinion

was based on plaintiff's subjective self-report. ... This is a proper basis for discounting an opinion.").

Plaintiff also argues that the ALJ erred when considering the consistency of Ms. O'Malley's opinion with the record, particularly the GAF scores in the record. See Doc. #11-1 at 8. GAF scores are not generally considered persuasive evidence. "'Unless the GAF rating is well supported and consistent with other evidence in the file, it is entitled to little weight under our rules.'" Estrella v. Berryhill, 925 F.3d 90, 97 (2d Cir. 2019) (quoting U.S. Soc. Sec. Admin., Office of Disability Programs, AM-13066, Global Assessment of Functioning (GAF) Evidence in Disability Adjudication (Oct. 14, 2014)). The ALJ acknowledged the GAF scores, and discussed in detail the reasons that the scores were given little weight, correctly observing that "without explanation or supporting detail, a GAF score is of little probative significance." Tr. 20.

Plaintiff also contends that Ms. O'Malley's opinion is consistent with the opinion of Dr. Antiaris and that "[h]ad the ALJ properly considered Dr. Antiaris' opinion, [she] would have found that it actually supported Therapist O'Malley's opinion." Doc. #11-1 at 10.[8] It is true that Dr. Antiaris, a consulting

---

[8] Plaintiff limits her criticism of the ALJ's evaluation of Dr. Antiaris' opinion to its relation to Ms. O'Malley's opinion. The

examiner, found that plaintiff was markedly limited in her ability to deal with stress. See Tr. 19. The ALJ carefully considered Dr. Antiaris' opinion, including this particular aspect of it. Indeed, the ALJ discussed in detail the various records relating to plaintiff's ability to manage stress. See Tr. 17-19. These limitations were accounted for in the RFC, by "reduced social demands and no decision making." Tr. 19-20. The ALJ "accommodated the claimant's reports of anxiety and panic attacks with reduced social demands and simple work activities without decision making to avoid an exacerbation of her symptoms." Tr. 19. While the plaintiff disagrees with the ALJ's evaluation of these opinions, those evaluations were thoroughly explained and adequately supported.

Pursuant to 20 C.F.R. §416.927(c), the ALJ must consider the consistency of each opinion with the entire record. The ALJ did so. See Tr. 17-20. The Second Circuit does not require a "slavish recitation of each and every factor [of 20 C.F.R. §416.927(c)] where the ALJ's reasoning and adherence to the regulation are clear." Atwater v. Astrue, 512 F. App'x 67, 70 (2d Cir. 2013) (citing Halloran v. Barnhart, 362 F.3d 28, 31-32 (2d Cir. 2004) (per curiam)). Accordingly, the Court finds that

---

Court therefore does not construe plaintiff's motion as challenging the weight assigned to Dr. Antiaris' opinion.

the ALJ appropriately considered the factors described in 20 C.F.R. §416.927(c) when evaluating the opinion of Ms. O'Malley and that substantial evidence supports the ALJ's assignment of weight to that opinion.[9]

## VI.   CONCLUSION

For the reasons set forth herein, plaintiff's Motion to Reverse or Remand the Decision of the Commissioner **[Doc. #11]** is **DENIED** and defendant's Motion for an Order Affirming the Decision of the Commissioner **[Doc. #15]** is **GRANTED**.

It is so ordered at New Haven, Connecticut, this 5th day of August, 2020.

_____/s/_____

HON. SARAH A. L. MERRIAM
UNITED STATES MAGISTRATE JUDGE

---

[9] Plaintiff argues in passing that the ALJ's reliance on the testimony of the VE at Step Five was in error, because the RFC did not include limitations she believes were warranted. See Doc. #11-1 at 11. The ALJ posed a hypothetical to the VE with restrictions identical to those included in the ultimate RFC determination. When an ALJ's RFC determination is supported by substantial evidence, the ALJ may rely on the VE's response to the hypothetical posed based on that RFC. See Salmini v. Comm'r of Soc. Sec., 371 F. App'x 109, 114 (2d Cir. 2010); see also McIntyre v. Colvin, 758 F.3d 146, 150 (2d Cir. 2014). Plaintiff's only claim that the RFC was inadequate is based on the opinion of Ms. O'Malley. The Court has found that argument unpersuasive, and finds that the RFC is supported by substantial evidence. Accordingly, the ALJ appropriately relied on the VE's testimony and did not err at step five.